FILED
CABARRUS COUNTY NC
WAYNE NIXON
REGISTER OF DEEDS

| | |
|---|---|
| FILED | Dec 29, 2017 |
| AT | 04:22 pm |
| BOOK | 12829 |
| START PAGE | 0086 |
| END PAGE | 0100 |
| INSTRUMENT # | 33695 |
| EXCISE TAX EBV | $0.00 |

SCANNED AND RETURNED

This document prepared by:
Todd Ware
Prism Renewables, Inc.
9007 Unbridle Lane
Waxhaw, NC 28173

Upon recordation return to:

Prism Renewables, Inc.
9007 Unbridle Lane
Waxhaw, NC 28173

# Deed of Trust, Assignment and Security Agreement

**THIS DEED OF TRUST, ASSIGNMENT AND SECURITY AGREEMENT** (this "**Deed of Trust**") is made as of the 29th day of December, 2017, by and between **FIVE M'S, L.L.C.**, a Virginia limited liability company (the "**Grantor**") with an address at 1583 Ridgedale Road, Harrisonburg, VA 22801, **PRISM MCBRIDE HOLDINGS LLC**, a Delaware limited liability company (the "**Trustee**"), for the benefit of **PRISM RENEWABLES INC.**, a Delaware corporation (the "**Lender**"), as beneficiary of this Deed of Trust.

**WHEREAS,** the Grantor is the owner of a certain tract or parcel of land described in Exhibit A attached hereto and made a part hereof, together with the improvements now or hereafter erected thereon by Grantor; and

**WHEREAS,** the Grantor has borrowed from the Lender and is executing and delivering this Deed of Trust as collateral security for a borrowing from the Lender, in an amount not to exceed ONE MILLION FORTY THREE THOUSAND SIX HUNDRED EIGHTY SEVEN DOLLARS AND EIGHTY CENTS ($1,043,687.80) (the "**Loan**"), which Loan is evidenced by a promissory note in favor of the Lender (as the same may be amended, supplemented or replaced from time to time, the "**Note**");

**NOW, THEREFORE,** for the purpose of securing the payment and performance of the following obligations (collectively called the "**Obligations**"):

(A) The Loan, the Note and all other loans, advances, debts, liabilities, obligations, covenants and duties owing by the Grantor to the Lender of any kind or nature, present or future (including any interest accruing thereon after maturity, or after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding relating to the Grantor, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), whether direct or indirect

- 1 -

Form 12A – NC Rev. 7/12

(including those acquired by assignment or participation), absolute or contingent, joint or several, due or to become due, now existing or hereafter arising, whether or not (i) evidenced by any note, guaranty or other instrument, (ii) arising under any agreement, instrument or document, (iii) for the payment of money, (iv) arising by reason of an extension of credit or loan; and (v) any amendments, extensions, renewals and increases of or to any of the foregoing, and all costs and expenses of the Lender and/or Trustee incurred in the documentation, negotiation, modification, enforcement, collection and otherwise in connection with any of the foregoing, including reasonable attorneys' fees and expenses; and

(B) Any sums advanced by the Lender or which may otherwise become due pursuant to the provisions of the Note or this Deed of Trust or pursuant to any other document or instrument at any time delivered to the Lender to evidence or secure any of the Obligations or which otherwise relate to any of the Obligations (as the same may be amended, supplemented or replaced from time to time, the **"Loan Documents"**).

The Grantor, for good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound hereby, does hereby give, grant, bargain, sell, convey, assign, transfer, hypothecate, pledge, set over and confirm unto the Trustee, in trust with power of sale and the right of entry and possession, forever, all of the Grantor's right, title, estate, claim and interest in the following described property, all accessions and additions thereto, all substitutions therefor and replacements and proceeds thereof, and all reversions and remainders of such property now owned or held or hereafter acquired (the **"Property"**), to wit:

(a) All of the Grantor's estate in the premises described in <u>Exhibit A</u>, together with all of the easements, rights of way, privileges, liberties, hereditaments, gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining, and all of the Grantor's estate, right, title, interest, claim and demand therein and in the public streets and ways adjacent thereto, either in law or in equity (the **"Land"**);

(b) All the buildings, structures and improvements of every kind and description now or hereafter erected or placed on the Land, and all facilities, fixtures, machinery, apparatus, appliances, installations, machinery and equipment, including all building materials to be incorporated into such buildings, all electrical equipment necessary for the operation of such buildings and heating, air conditioning and plumbing equipment now or hereafter attached to, located in or used in connection with those buildings, structures or other improvements, with the exception of buildings, structures and improvements owned by lessees of Grantor (the **"Improvements"**); and

(c) All proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims.

TO HAVE AND TO HOLD the Property and all other interests described above unto the Trustee; BUT IN TRUST, NEVERTHELESS to secure to the Lender and the Trustee for the benefit of the Lender the payment and performance by the Grantor and/or any borrower (if not the Grantor) of all of the Obligations; PROVIDED, HOWEVER, that until the occurrence of an Event of Default, the Grantor shall have the sole right to remain in peaceful possession of the Property; PROVIDED, FURTHER HOWEVER, that if the Grantor and/or any borrower (if not the Grantor) shall pay, perform and satisfy in full all of the Obligations, then, in such case, the estate, right, title and interest of the Trustee and the Lender in the Property shall cease, and upon proof to the satisfaction of the Lender that the Obligations have been paid, performed and satisfied in full, the Lender shall, at the Grantor's expense, deliver to the Grantor an instrument in recordable form releasing this Deed of Trust; subject, however, to the survival of certain rights and benefits in accordance with Section 28 (<u>Survival; Successors and Assigns</u>) hereof. THIS DEED OF TRUST CONSTITUTES A SECURITY AGREEMENT UNDER THE UCC. The Grantor hereby grants to the Trustees and Lender a security interest in all Property to which Article 9 of the UCC

- 2 -

Form 12A – NC Rev. 7/12
Case 3:21-cv-00169-RJC-DCK     Document 1-3     Filed 04/15/21     Page 2 of 15

is applicable and the proceeds (cash and noncash) thereof. The Lender shall have all the rights and remedies of a secured party under said UCC with respect to such Property.

**AND** the Grantor covenants and agrees with and represents to the Lender as follows:

This Deed of Trust is given wholly or partly to secure any future obligations and additional loans as well as any and all present or future advances and readvances under the Obligations made by the Lender to or for the benefit of the Grantor or the Property, to the fullest extent permitted by applicable law, including, without limitation: (a) principal, interest, late charges, fees and other amounts due under the Obligations or this Deed of Trust; (b) all advances made or costs incurred by the Lender for the payment of real estate taxes, assessments or other governmental charges, maintenance charges, insurance premiums, appraisal charges, environmental inspection, audit, testing or compliance costs, and costs incurred by the Lender for the enforcement and protection of the Property or the lien of this Deed of Trust; (c) all legal fees, costs and other expenses incurred by the Lender by reason of any default or otherwise in connection with the Obligations; and (d) as otherwise permitted pursuant to Article 7 of Chapter 45 of the North Carolina General Statutes. The maximum principal amount which may be secured hereby at any one time shall not exceed $1,043,687.80. The time period within which such future Obligations may be incurred and such future advances may be made shall not extend for more than thirty (30) years from the date of this Deed of Trust.

The Grantor agrees that if, at any time during the term of this Deed of Trust or following a foreclosure hereof (whether before or after the entry of a final account of foreclosure), the Grantor fails to perform or observe any covenant or obligation under this Deed of Trust, including, without limitation, payment of any of the foregoing, the Lender may (but shall not be obligated to) take such steps as are reasonably necessary to remedy any such nonperformance or nonobservance and provide payment thereof. All amounts advanced by the Lender shall be added to the amount secured by this Deed of Trust and the other Loan Documents (and, if advanced after the entry of a final account of foreclosure, by such judgment of foreclosure), and shall be due and payable on demand.

1. **Representations and Warranties.** The Grantor represents and warrants to the Trustee and the Lender that (i) the Grantor has good and marketable title to an estate in fee simple absolute in the Land and Improvements and has all right, title and interest in all other property constituting a part of the Property, in each case free and clear of all liens and encumbrances, except as may otherwise be set forth in Old Republic National Title Insurance Company Title Commitment 17CU79099, and (ii) its name, type of organization, jurisdiction of organization and chief executive office are true and complete as set forth in the heading of this Deed of Trust. This Deed of Trust is a valid and enforceable first lien on the Property, and the Lender shall, subject to the Grantor's right of possession prior to an Event of Default, quietly enjoy and possess the Property. The Grantor shall preserve such title as it warrants herein and the validity and priority of the lien hereof and shall forever warrant and defend the same to the Trustee and the Lender against the claims of all persons.

2. **Affirmative Covenants.** Until all of the Obligations shall have been fully paid, satisfied and discharged the Grantor shall:

    (a) <u>Legal Requirements</u>. Promptly comply with and conform to all present and future laws, statutes, codes, ordinances, orders and regulations and all covenants, restrictions and conditions which may be applicable to the Grantor or to any of the Property (the **"Legal Requirements"**).

    (b) <u>Impositions</u>. Before interest or penalties are due thereon and otherwise when due, the Grantor shall pay all taxes of every kind and nature, all charges for any easement or agreement maintained for the benefit of any of the Property, all general and special assessments (including any condominium or planned unit development assessments, if any), levies, permits, inspection and license

fees, all water and sewer rents and charges, and all other charges and liens, whether of a like or different nature, imposed upon or assessed against the Grantor or any of the Property (the **"Impositions"**). Within thirty (30) days after the payment of any Imposition, the Grantor shall deliver to the Lender written evidence acceptable to the Lender of such payment. The Grantor's obligations to pay the Impositions shall survive the Lender's taking title to (and possession of) the Property through foreclosure, deed-in-lieu or otherwise, as well as the termination of the Deed of Trust including, without limitation, by merger into a deed.

(c) <u>Maintenance of Security</u>. Use, and permit others to use, the Property only for its present use or such other uses as permitted by applicable Legal Requirements. The Grantor covenants and agrees not to take or permit any action with respect to the Property which will in any manner impair the security of this Deed of Trust or the use of the Property as set forth in the Loan Documents.

3. **<u>Due on Sale Clause</u>.** The Grantor shall not sell, convey or otherwise transfer any interest in fee simple title to the Property (whether voluntarily or by operation of law), or agree to do so, without the Lender's prior written consent, including any sale, conveyance, encumbrance, assignment, or other transfer of (including installment land sale contracts), or the grant of a security interest in, all or any part of the legal or equitable fee simple title to the Property.

4. **<u>Insurance</u>.** Grantor shall maintain comprehensive general public liability insurance on the Property in commercially reasonable amounts. All policies, including policies for any amounts carried in excess of the required minimum and policies not specifically required by the Lender, shall be with an insurance company or companies reasonably satisfactory to the Lender, shall be in form reasonably satisfactory to the Lender, shall meet reasonable coinsurance requirements of the Lender, shall be maintained in full force and effect, shall be assigned to the Lender, with premiums prepaid, as collateral security for payment of the Obligations, shall be endorsed with a standard mortgagee clause in favor of the Lender and shall provide for at least thirty (30) days notice of cancellation to the Lender. Such insurance shall also name the Lender as an additional insured under the comprehensive general public liability policy.

5. **<u>Condemnation</u>.** The Grantor, immediately upon obtaining knowledge of the institution of any proceedings for the condemnation or taking by eminent domain of any of the Property, shall notify the Lender of the pendency of such proceedings. The Lender may participate in any such proceedings and the Grantor shall deliver to the Lender all instruments requested by it to permit such participation. Any award or compensation for property taken or for damage to property not taken, whether as a result of such proceedings or in lieu thereof, is hereby assigned to and shall be received and collected directly by the Lender, and any award or compensation shall be applied, at the Lender's option, to any part of the Obligations and in any order (notwithstanding that any of such Obligations may not then be due and payable) or to the repair and restoration of any of the Property under such terms and conditions as the Lender may impose.

6. **<u>Environmental Matters</u>.** (a) For purposes of this Section 10, the term **"Environmental Laws"** shall mean all federal, state and local laws, regulations and orders, whether now or in the future enacted or issued, pertaining to the protection of land, water, air, health, safety or the environment. The term **"Regulated Substances"** shall mean all substances regulated by Environmental Laws, or which are known or considered to be harmful to the health or safety of persons, or the presence of which may require investigation, notification or remediation under the Environmental Laws. The term **"Contamination"** shall mean the discharge, release, emission, disposal or escape of any Regulated Substances into the environment.

(b) The Grantor represents and warrants to Grantor's actual knowledge, without any independent inquiry (i) that no Contamination is present at, on or under the Property and that no

- 4 -

Form 12A – NC Rev. 7/12

Case 3:21-cv-00169-RJC-DCK    Document 1-3    Filed 04/15/21    Page 4 of 15

Contamination is being or has been emitted onto any surrounding property; (ii) all operations and activities on the Property have been and are being conducted in accordance with all Environmental Laws, and the Grantor has all permits and licenses required under the Environmental Laws; (iii) no underground or aboveground storage tanks are or have been located on or under the Property; and (iv) no legal or administrative proceeding is pending or threatened relating to any environmental condition, operation or activity on the Property, or any violation or alleged violation of Environmental Laws. These representations and warranties shall be true as of the date hereof, and shall be deemed to be continuing representations and warranties which must remain true, correct and accurate during the entire duration of the term of this Deed of Trust.

(c) The Grantor shall ensure, at its sole cost and expense, that the Property and the conduct of all operations and activities thereon comply and continue to comply with all Environmental Laws. The Grantor shall notify the Lender promptly and in reasonable detail in the event that the Grantor becomes aware of any violation of any Environmental Laws, the presence or release of any Contamination with respect to the Property, or any governmental or third party claims relating to the environmental condition of the Property or the conduct of operations or activities thereon. The Grantor also agrees not to permit or allow the presence of Regulated Substances on any part of the Property, except for those Regulated Substances (i) which are used in the ordinary course of the Grantor's business, but only to the extent they are in all cases used in a manner which complies with all Environmental Laws; and (ii) those Regulated Substances which are naturally occurring on the Property. The Grantor agrees not to cause, allow or permit the presence of any Contamination on the Property.

(d) The Trustee and the Lender shall not be liable for, and the Grantor shall indemnify, defend and hold the Trustee and the Lender and the Indemnified Parties (as hereinafter defined) and all of their respective successors and assigns harmless from and against all losses, costs, liabilities, damages, fines, claims, penalties and expenses (including reasonable attorneys', consultants' and contractors' fees, costs incurred in the investigation, defense and settlement of claims, as well as costs incurred in connection with the investigation, remediation or monitoring of any Regulated Substances or Contamination) that the Trustee and the Lender or any Indemnified Party may suffer or incur (including as holder of the Deed of Trust, as mortgagee in possession or as successor in interest to the Grantor as owner of the Property by virtue of a power of sale, foreclosure or acceptance of a deed in lieu of foreclosure) as a result of or in connection with (i) any Environmental Laws (including the assertion that any lien existing

- 5 -

**Form 12A – NC Rev. 7/12**

Case 3:21-cv-00169-RJC-DCK     Document 1-3     Filed 04/15/21     Page 5 of 15

or arising pursuant to any Environmental Laws takes priority over the lien of the Deed of Trust); (ii) the breach of any representation, warranty, covenant or undertaking by the Grantor in this Section 10; (iii) the presence on or the migration of any Contamination or Regulated Substances on, under or through the Property; or (iv) any litigation or claim by the government or by any third party in connection with the environmental condition of the Property or the presence or migration of any Regulated Substances or Contamination on, under, to or from the Property.

**7.** **Inspection of Property.** Subject to the rights of lessees and tenants of the Property, the Trustee and the Lender shall have the right to enter the Property at any reasonable hour for the purpose of inspecting the conduct of operations and activities on the Property. Subject to the rights of lessees and tenants of the Property, the Grantor shall provide the Trustee and the Lender (and the Lender's employees, agents and consultants) reasonable rights of access to the Property as well as such information about the Property and the past or present conduct of operations and activities thereon as the Trustee or the Lender shall reasonably request.

**8.** **Events of Default.** The occurrence of any one or more of the following events shall constitute an **"Event of Default"** hereunder: (a) any Event of Default (as such term is defined in any of the Obligations); (b) any default under any of the Obligations that does not have a defined set of "Events of Default" and the lapse of any notice or cure period provided in such Obligations with respect to such default; (c) demand by the Lender under any of the Obligations that have a demand feature; (d) the Grantor's failure to perform any of its obligations under this Deed of Trust; (e) falsity, inaccuracy or material breach by the Grantor of any written warranty, representation or statement made or furnished to the Lender by or on behalf of the Grantor; (f) an uninsured material loss, theft, damage, or destruction to any of the Property, or the entry of any judgment against the Grantor, or any lien against or the making of any levy, seizure or attachment of or on the Property; (g) the Lender's failure to have a lien on the Property with the priority required under Section 1; (h) any indication or evidence received by the Lender that the Grantor may have directly or indirectly been engaged in any type of activity which, in the Lender's discretion, might result in the forfeiture of any property of the Grantor to any governmental entity, federal, state or local; (i) foreclosure proceedings are instituted against the Property upon any other lien or claim, whether alleged to be superior or junior to the lien of this Deed of Trust; or (j) the failure by the Grantor to pay any Impositions as required under Section 2(b), or to maintain in full force and effect any insurance required under Section 4.

**9.** **Rights and Remedies of Lender.** If an Event of Default occurs, the Lender may, acting alone or together with or through the Trustee or any agents or attorneys at the Lender's option and without demand, notice or delay, do one or more of the following:

(a) <u>Acceleration</u>. The Lender may declare that all sums payable under the Loan Documents are immediately due and payable in full, whereupon all such sums shall be immediately due and payable in full regardless of any installment payment provisions, maturity date, or other terms and conditions of any Loan Document.

- 6 -

Form 12A – NC Rev. 7/12

(b)     <u>Enter, Manage, Control</u>. The Lender may enter upon the Land and Improvements, exclude the Grantor, and anyone claiming by, through or under Grantor, from the Land and Improvements, exercise all rights and powers of the Grantor with respect to the Property, and collect all Rents or other income thereof.

(c)     <u>Exercise Rights as Secured Party</u>. The Lender may exercise all of the rights and remedies of a secured party under the UCC. The Grantor waives any notice of disposition of any personal property, provided to the extent any such notice is required and cannot be waived, the Grantor agrees that such notice shall be deemed reasonable and shall fully satisfy any requirement for notice if such notice is mailed, postage prepaid, to Grantor at least five (5) days before the time of disposition.

(d)     <u>Foreclosure and Sale</u>. The Lender may (i) direct the Trustee to sell (and the Trustee is hereby empowered to sell) all or any part of the Property at public auction to the last and highest bidder for cash (free of any equity of redemption, homestead, dower, curtesy or other exemption, all of which are expressly waived by the Grantor) at such time and place and upon such terms and conditions as may be required by applicable law or rule of court and after having complied with the North Carolina law applicable to power of sale foreclosures provided in Article 2A of Section 45 of the North Carolina General Statutes (a "**Power of Sale Foreclosure**"); (ii) elect to foreclose this Deed of Trust pursuant to a judicial foreclosure action; or (iii) take such other action at law, equity or by contract for the enforcement of this Deed of Trust and realization on the security herein or elsewhere provided for, as the law may allow. In any action or proceeding to foreclose this Deed of Trust or to collect the sums secured hereby, the Lender may proceed therein to final judgment and execution for the entire unpaid balance of the Obligations, together with all future advances and any other sums due by the Grantor and/or any borrower (if not the Grantor) in accordance with the provisions of this Deed of Trust, together with interest from the date of default at the Default Rate (as defined in the Note) and all expenses of sale and of all proceedings in connection therewith, including reasonable attorneys' fees. The unpaid balance of any judgment shall bear interest at the greater of (A) the statutory rate provided for judgments, or (B) the Default Rate.

In the event that the Lender elects to direct the Trustee to sell the Property pursuant to a Power of Sale Foreclosure, the following provisions shall apply: (a) in exercising the power of sale and selling the Property, the Trustee shall comply with the provisions of North Carolina law governing power of sale foreclosures and shall give such notice of hearing as to the commencement of foreclosure proceedings, obtain such findings and leave of court, and give such notice of and advertise such foreclosure sale all as may then be required by such law; (b) upon such foreclosure sale or any required resale, it shall be lawful for the Trustee to convey the Property (or such portion thereof as may have been sold) to the successful bidder by way of a Trustee's deed without any covenant or warranty and any recitals of fact in such Trustee's deed shall be prima facie evidence of such facts; (c) the Trustee shall be entitled to a reasonable Trustee's fee as provided in N.C.G.S. § 45-21.15, not to exceed the maximum fee allowed by applicable law (the "**Commission**") as well as reimbursement for any attorney's fees incurred by Trustee; (d) the Trustee shall apply the proceeds of the sale first to the payment of all expenses and costs incurred in connection with such sale, including without limitation, advertising costs, title examination fees, transfer taxes, and court costs; second to the payment of the Trustee's Commission; third to payment of any taxes or governmental assessments which may be a lien against the Property, unless Trustee advertised and sold the Property subject to such taxes or assessments; and fourth, to the payment of the Obligations and sums secured hereby, with the excess, if any, of such proceeds after the payment in full of the Obligations and secured sums being distributed to the person or persons entitled thereto as their interests may appear; (e) if the Trustee commences a Power of Sale Foreclosure and such proceeding is terminated prior to the completion thereof, the Grantor shall pay to the Trustee all expenses incurred by the Trustee in connection with such proceeding and sale and a reasonable commission or compensation for services rendered by the Trustee but not more than the maximum fee allowed by applicable law; (f) at any sale

conducted by the Trustee, the Lender may bid for and become the purchaser of the Property or such portion thereof as has been offered for sale and in lieu of paying cash therefor the Lender may take settlement of the purchase price by a credit upon the Obligations due and payable and secured by this Deed of Trust; (g) the Trustee may require the successful bidder at any sale to deposit immediately with the Trustee cash or certified check in an amount up to twenty-five percent (25%) of the bid and such bid may be rejected if the deposit is not immediately made; (h) pursuant to Section 25-9-604(a), (b) and (c) of the North Carolina General Statutes (or any amendment thereto), the Trustee is expressly authorized and empowered to expose to sale and sell, together with the Land, any portion of the Property which constitutes personal property (if personal property is sold hereunder, it need not be at the place of sale); (i) any sale scheduled by the Trustee may be adjourned by announcement at the time and place appointed for such sale without further notice except as may be required by law; and (j) the sale by the Trustee of less than the whole of the Property shall not exhaust the right to sell any remainder of the Property and the Trustee is specifically empowered to make a successive sale or sales until the whole of the Property shall be sold; and if the proceeds of such sale of less than the whole of the Property shall be less than the aggregate of the Obligations, this Deed of Trust and the lien hereof shall remain in full force and effect as to the unsold portion of the Property just as though no sale had been made.

(f) **Appointment of Receiver**. The Lender may petition a court of competent jurisdiction to appoint a receiver of the Property. Such appointment may be made either before or after sale, without notice, without regard to the solvency or insolvency of the Grantor at the time of application for such receiver, without regard to the then value of the Property or whether the Property shall be then occupied as a homestead or not, and without regard to whether the Grantor has committed waste or allowed deterioration of the Property, and the Lender or any agent of the Lender may be appointed as such receiver. The Grantor hereby agrees that the Lender has a special interest in the Property and absent the appointment of such receiver the Property shall suffer waste and deterioration and the Grantor further agrees that it shall not contest the appointment of a receiver and hereby so stipulates to such appointment pursuant to this paragraph. Such receiver shall have the power to perform all of the acts permitted the Lender pursuant to Section 13(b) and such other powers which may be necessary or customary in such cases for the protection, possession, control, management and operation of the Property during such period.

(g) **Other Remedies**. The Lender shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by the Grantor under the terms of this Deed of Trust, as they become due, without regard to whether or not any other Obligations shall be due, and without prejudice to the right of the Lender thereafter to bring an action of foreclosure, or any other action, for any default by the Grantor existing at the time the earlier action was commenced. In addition, the Lender shall have the right to set-off all or any part of any amount due by Grantor to the Lender under any of the Obligations, against any indebtedness, liabilities or obligations owing by the Lender in any capacity to the Grantor, including any obligation to disburse to the Grantor any funds or other property on deposit with or otherwise in the possession, control or custody of the Lender.

10. **Lender's Right to Protect Security**. The Trustee and the Lender are hereby authorized to do any one or more of the following, irrespective of whether an Event of Default has occurred: (a) appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of the Trustee or the Lender hereunder; (b) purchase such insurance policies covering the Property as the Lender may elect if the Grantor fails to maintain the insurance coverage required hereunder; and (c) take such action as the Trustee or the Lender may determine to pay, perform or comply with any Impositions or Legal Requirements, to cure any Events of Default and to protect its security in the Property.

11. **Certain Waivers**. To the full extent the Grantor may do so, the Grantor agrees that the Grantor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or

- 8 -

hereafter in force providing for any appraisement, valuation, stay, extension or redemption, homestead, moratorium, reinstatement, marshaling or forbearance, and the Grantor, for the Grantor, the Grantor's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property, to the extent permitted by applicable law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of intention to mature or declare due the whole of the Obligations, notice of election to mature or declare due the whole of the Obligations and all rights to a marshaling of assets of the Grantor, including the Property, or to a sale in inverse order of alienation in the event of foreclosure of the liens and/or security interests hereby created. The Grantor shall not have or assert any right under any statute or rule of law pertaining to the marshaling of assets, sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents, or other matters whatsoever to defeat, reduce or affect the right of the Lender under the terms of this Deed of Trust to a sale of the Property for the collection of the secured indebtedness without any prior or different resort for collection, or the right of the Lender under the terms of this Deed of Trust to the payment of the secured indebtedness out of the proceeds of sale of the Property in preference to every other claimant whatsoever. The Grantor waives any right or remedy which the Grantor may have or be able to assert pursuant to any provision of North Carolina law, including, but not limited to, the rights or remedies set forth in North Carolina Gen. Stat. §26-7, et. seq., pertaining to the rights and remedies of sureties. If any law referred to in this Section and now in force, of which the Grantor or the Grantor's heirs, devisees, representatives, successors or assigns or any other persons claiming any interest in the Property might take advantage despite this Section, shall hereafter be repealed or cease to be in force, such law shall not thereafter be deemed to preclude the application of this Section.

12. **Rights of Lender, Trustee Cumulative.** Each right, power and remedy of the Lender or the Trustee provided in the Loan Documents shall be in addition to every other right, power or remedy, and the exercise or beginning of the exercise by the Lender or the Trustee of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise by the Lender or the Trustee of any or all such other rights, powers or remedies.

13. **Trustee's Liability; Powers.** The Trustee shall not be liable for any error of judgment or act done by the Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever (including Trustee's negligence), except for the Trustee's gross negligence or willful misconduct. The Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by the Trustee hereunder, believed by the Trustee in good faith to be genuine. All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law), and the Trustee shall be under no liability for interest on any moneys received by the Trustee hereunder. The Grantor hereby ratifies and confirms any and all acts which the herein named Trustee or its successor or successors, substitute or substitutes, in this trust, shall do lawfully by virtue hereof.

14. **Substitution of Trustee.** The Lender may, at any time and from time to time, without notice, at the Lender's discretion, remove the Trustee and appoint a substitute trustee (the "**Substitute Trustee**") by filing in the records where this Deed of Trust is recorded an instrument affecting such removal and appointment. A Substitute Trustee shall be vested with title to the Property and with all rights, powers, and duties of the original Trustee herein and all provisions hereof pertaining to the Trustee shall similarly affect any Substitute Trustee. The necessity of the Trustee, or any Substitute Trustee, making oath or giving bond is expressly waived.

15. **Notices.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder ("**Notices**") must be in writing and will be effective upon receipt. Notices may be given in any manner to which the parties may separately agree, including electronic mail. Without limiting the foregoing, first-class mail and commercial courier service are hereby agreed to as

- 9 -

Form 12A – NC Rev. 7/12
Case 3:21-cv-00169-RJC-DCK     Document 1-3     Filed 04/15/21     Page 9 of 15

acceptable methods for giving Notices. Regardless of the manner in which provided, Notices may be sent to a party's address as set forth above or to such other address as any party may give to the other for such purpose in accordance with this section.

16. **Further Acts.** By its signature hereon, the Grantor hereby irrevocably authorizes the Trustee and/or the Lender to execute (on behalf of the Grantor) and file against the Grantor one or more financing, continuation or amendment statements pursuant to the UCC in form satisfactory to the Lender, and the Grantor will pay the cost of preparing and filing the same in all jurisdictions in which such filing is deemed by the Lender to be necessary or desirable in order to perfect, preserve and protect its security interests. If required by the Lender, the Grantor will execute all documentation necessary for the Lender to obtain and maintain perfection of its security interests in the Property. The Grantor will, at the cost of the Grantor, and without expense to the Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, assignments, notices of assignment, transfers and assurances as the Lender shall, from time to time, require for the better assuring, conveying, assigning, transferring or confirming unto the Lender the property and rights hereby conveyed, or which Grantor may be or may hereafter become bound to convey or assign to the Lender, or for carrying out the intent of or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust. The Grantor grants to the Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to the Lender under the Note, this Deed of Trust, the other Loan Documents, at law or in equity, including, without limitation, the rights and remedies described in this paragraph.

17. **Changes in the Laws Regarding Taxation.** If any law is enacted or adopted or amended after the date of this Deed of Trust which deducts the Obligations from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Grantor or the Lender's interest in the Property, the Grantor will pay such tax, with interest and penalties thereon, if any. If the Lender determines that the payment of such tax or interest and penalties by the Grantor would be unlawful or taxable to the Lender or unenforceable or provide the basis for a defense of usury, then the Lender shall have the option, by written notice of not less than ninety (90) days, to declare the entire Obligations immediately due and payable.

18. **Documentary Stamps.** If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Deed of Trust, or impose any other tax or charge on the same, the Grantor will pay for the same, with interest and penalties thereon, if any.

19. **Preservation of Rights.** No delay or omission on the part of the Lender or the Trustee to exercise any right or power will impair any such right or power or be considered a waiver of any such right or power, nor will the Lender's action or inaction impair any such right or power. The Lender's and Trustee's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which they may have under other agreements, at law or in equity.

20. **Illegality.** If any provision contained in this Deed of Trust should be invalid, illegal or unenforceable in any respect, it shall not affect or impair the validity, legality and enforceability of the remaining provisions of this Deed of Trust.

21. **Changes in Writing.** No modification, amendment or waiver of, or consent to any departure by the Grantor from, any provision of this Deed of Trust will be effective unless made in a writing signed by the Lender, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on the Grantor will entitle the Grantor to any other or further notice or demand in the same, similar or other circumstance.

22. **Entire Agreement.** This Deed of Trust (including the documents and instruments referred to herein) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof.

23. **Survival; Successors and Assigns.** This Deed of Trust will be binding upon and inure to the benefit of the Grantor, the Trustee and the Lender and their respective heirs, executors, administrators, successors and assigns; provided, however, that the Grantor may not assign this Deed of Trust in whole or in part without the Lender's prior written consent and the Lender at any time may assign this Deed of Trust in whole or in part; and provided, further, that the rights and benefits under the Paragraphs entitled "Environmental Matters", "Inspection of Property" and "Indemnity" shall also inure to the benefit of any persons or entities who acquire title or ownership of the Property from or through the Lender or through action of the Lender (including a foreclosure, sheriff's or judicial sale). The provisions of Paragraphs entitled "Environmental Matters", "Inspection of Property" and "Indemnity" shall survive the termination, satisfaction or release of this Deed of Trust, the foreclosure of this Deed of Trust or the delivery of a deed in lieu of foreclosure.

24. **Interpretation.** In this Deed of Trust, unless the Lender and the Grantor otherwise agree in writing, the singular includes the plural and the plural the singular; words importing any gender include the other genders; references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; the word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; references to articles, sections (or subdivisions of sections) or exhibits are to those of this Deed of Trust; and references to agreements and other contractual instruments shall be deemed to include all subsequent amendments and other modifications to such instruments, but only to the extent such amendments and other modifications are not prohibited by the terms of this Deed of Trust. Section headings in this Deed of Trust are included for convenience of reference only and shall not constitute a part of this Deed of Trust for any other purpose. If this Deed of Trust is executed by more than one party as Grantor, the obligations of such persons or entities will be joint and several.

25. **Indemnity.** The Grantor agrees to indemnify each of the Trustee, the Lender, each legal entity, if any, who controls, is controlled by or is under common control with the Trustee and the Lender and each of their respective directors, officers, employees and agents (the **"Indemnified Parties"**), and to defend and hold each Indemnified Party harmless from and against, any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur, or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of the Grantor), in connection with or arising out of or relating to the matters referred to in this Deed of Trust or in the other Loan Documents, whether (a) arising from or incurred in connection with any breach of a representation, warranty or covenant by the Grantor, or (b) arising out of or resulting from any suit,

- 11 -

Form 12A – NC Rev. 7/12

Case 3:21-cv-00169-RJC-DCK    Document 1-3    Filed 04/15/21    Page 11 of 15

action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority; provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses solely attributable to an Indemnified Party's gross negligence or willful misconduct. The indemnity agreement contained in this Section shall survive the termination of this Deed of Trust, payment of any Obligations and assignment of any rights hereunder. The Grantor may participate at its expense in the defense of any such action or claim.

26. **Governing Law and Jurisdiction.** This Deed of Trust has been delivered to and accepted by the Lender and will be deemed to be made in the State of North Carolina. **THIS DEED OF TRUST WILL BE INTERPRETED AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NORTH CAROLINA, EXCLUDING ITS CONFLICT OF LAWS RULES.** The Grantor hereby irrevocably consents to the exclusive jurisdiction of any state or federal court in Charlotte, North Carolina; provided that nothing contained in this Deed of Trust will prevent the Lender from bringing any action, enforcing any award or judgment or exercising any rights against the Grantor individually, against any security or against any property of the Grantor within any other county, state or other foreign or domestic jurisdiction. The Lender and the Grantor agree that the venue provided above is the most convenient forum for both the Lender and the Grantor. The Grantor waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Deed of Trust.

27. **Change in Name or Locations.** The Grantor hereby agrees that if the location of any of the Property changes from the Land, or if the Grantor changes its name, its type of organization, its state of organization, or establishes a name in which it may do business that is not the current name of the Grantor, the Grantor will immediately notify the Trustee and the Lender in writing of the additions or changes.

## REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

The Grantor acknowledges that it has read and understood all the provisions of this Deed of Trust, and has been advised by counsel as necessary or appropriate.

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

**FIVE M'S, L.L.C.**

By: _Henry T. McBride Jr._ (SEAL)
Name: Henry T. McBride, Jr.
Title: Authorized Signatory

STATE OF _Virginia_

COUNTY OF _Rockingham_
(Place of Acknowledgment)

    I certify that the following person personally appeared before me this day, acknowledging to me that he/she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: _Authorized Signatory - Henry T McBride Jr._

Date: _December 21_, 20_17_

(Official Seal)

_Kristi L Habwe_
Official Signature of Notary

_Kristi L Habwe_
Notary's printed or typed name, Notary Public
My commission expires: _4·30·18_

- 17 -

Form 12A – NC Rev. 7/12

# EXHIBIT A

## Legal Description

### Tract 1

All that certain piece, parcel or tract of land situate, lying and being in Cabarrus County, North Carolina, and being more particularly described as follows:

BEGINNING at a flat iron marking the northernmost point of property owned by Nancy A. Kucera (now or formerly, as described in Deed Book 6668, Page 172 of the Cabarrus County Public Registry (the "Registry") and having Parcel Identification Number 5556-43-5871), also marking the easternmost corner of property owned by Five M's LLC (now or formerly, as described in Deed Book 8729, Page 304 and Deed Book 10231, Page 113 of the Registry and having Parcel Identification Number 5556-24-4136), and also marking a common corner between the Kucera Property and Five M's Property; thence from said POINT AND PLACE OF BEGINNING with a new line South 13°33'24" East a distance of 140.89 feet to a computed point located on property owned by Gary W. Laton, LLC (now or formerly, as described in Deed Book 10024, Page 112 of the Registry and having Parcel Identification Number 5556-45-9854); thence leaving the Laton Property South 31°39'42" West a distance of 525.88 feet to a computed point; thence with the arc of a curve to the right having a radius of 100.00 feet and an arc length of 147.53 feet (chord bearing South 73°55'38" West and chord distance of 134.51 feet) to a computed point; thence North 63°48'30" West a distance of 293.55 feet to a computed point; thence South 16°26'37" West a distance of 1374.72 feet to a computed point; thence South 68°35'36" East a distance of 280.19 feet to a computed point; thence with the arc of a curve to the right having a radius of 100.00 feet and an arc length of 52.47 feet (chord bearing South 53°33'41" East and chord distance of 51.87 feet) to a computed point; thence South 38°31'46" East a distance of 726.01 feet to a computed point; thence with the arc of a curve to the right having a radius of 100.00 feet and an arc length of 114.49 feet (chord bearing South 05°43'45" East and chord distance of 108.34 feet) to a computed point; thence South 27°04'16" West a distance of 1069.99 feet to a computed point located on the approximate center line of Bost Creek, said point also being located on the northern line of property owned by Khristopher L. Finsel and Joli A. Finsel (now or formerly, as described in Deed Book 10826, Page 244 of the Registry); thence with the common line of the Finsel Property the following two (2) courses and distances: (1) North 53°25'32" West a distance of 28.17 feet to a computed point; and (2) North 26°09'36" West a distance of 90.15 feet to a computed point located on the eastern line of the Five M's Property; thence with the common line of the Five M's Property the following six (6) courses and distances: (1) North 27°04'16" East a distance of 1011.38 feet to a ½" pipe (crossing a ½" pipe located on the bank at 24.33 feet); (2) North 38°31'46" West a distance of 726.01 feet to a ½" pipe; (3) North 68°35'36" West a distance of 371.89 feet to a ½" pipe; (4) North 16°26'37" East a distance of 1585.06 feet to a ½" pipe; (5) South 63°48'30" East a distance of 412.19 feet to a ½" pipe; and (6) North 31°39'42" East a distance of 625.12 feet to the POINT AND PLACE OF BEGINNING; containing 10.707 acres, more or less, as shown on a survey prepared by Pyramid Land Surveying dated October 4, 2017, and sealed on December 22, 2017, entitled ALTA/NSPS LAND TITLE SURVEY FOR MCBRIDE PLACE ENERGY, LLC.

Said Tract 1 was acquired by Grantor by instrument recorded in Deed Book ___, Page ___, Cabarrus County Register of Deeds.

## Tract 2

Lying and being in Number 10 Township, Cabarrus County, North Carolina on the west side of Mount Pleasant Road, adjoining the lands of Joseph E. Underwood (formerly, Deed Book 8967, page 30) and Eugene T. Bost Ill (Deed Book 599, page 677), and others, and being bounded as follows:

BEGINNING at a magnetic nail in the centerline of Mount Pleasant Rd., the northeast corner of Joseph E. Underwood (formerly) and run thence with two lines of Underwood, (1) N. 85-20-00 W. (passing a #4 rebar at 31.00 feet) 2273.13 feet to a #4 rebar, and (2) S. 27-20-47 W. 210.81 feet to an old axle, corner of 5 M's, LLC (now or formerly, Deed Book 8729, page 304); thence with the line of Five M's, L.L.C., and others N. 85-41-53 W. (passing an old axle found online at 286.82 feet) 1367.24 feet to a square rod found, a corner in the line of Bobby Alan Widenhouse (now or formerly, Deed Book 732, page 325); and run thence with the line of Widenhouse, N. 04-52-18 W. 373.17 feet to an old axle found, corner of Widenhouse and Nancy D. Beatty (now or formerly); thence with the line of said Beatty and Richard N. Deas, Sr. (now or formerly, Deed Book 502, page 236) N. 04-56-06 W. 746.50 feet to a found solid iron rod in the line of these; thence with the line of Eugene T. Bost III, S. 86-59- 59 E. (passing a 1/2 inch iron pipe found 0.75 feet north of the line at 23.64 feet) 4307.13 feet to a magnetic nail set in the centerline of Mount Pleasant Rd., said point being S. 86-59-59 E. 33.28 feet from a #4 rebar); thence with the centerline of said road, three lines as follows: (1) S. 28-51-55 W. 633.47 feet, (2) S. 25-02-10 W. 201.39 feet, and (3) S. 19-15-45 W 268.15 feet to the Beginning, containing 94.988 acres, more or less, and being part of the 148.861 acres shown upon a Boundary Survey for JAB Farms L.L.C., by Petra Land Surveying, PLLC, dated April 23, 2007.

The above description was taken from said Boundary Survey and also from the Boundary Survey for Joseph E. Underwood of 32.457 Acres, a portion of the JAB Farms L.L.C. Property, by Petra Land Surveying, PLLC, dated October 22, 2009.

Said Tract 2 was acquired by Grantor by instrument recorded in Deed Book ___, Page ___, Cabarrus County Register of Deeds.