# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:21-CV-169-RJC-DCK

| | |
|---|---|
| PRISM RENEWABLES, INC., and LEWIS REYNOLDS, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )    **MEMORANDUM AND**<br>)    **RECOMMENDATION** |
| FIVE M'S L.L.C., | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on "Defendant Five M's L.L.C.'s Motion To Dismiss" (Document No. 14). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be denied.

## I. BACKGROUND

Plaintiffs Prism Renewables, Inc. ("Prism") and Lewis Reynolds ("Reynolds") (collectively, "Plaintiffs") initiated this action with the filing of a "Complaint" against Defendant Five M's L.L.C. ("Defendant" or "Five M's") on April 15, 2021. (Document No. 1). On November 9, 2021, Plaintiffs filed an "Amended Complaint" against Defendant. (Document No. 5). The case has a complicated procedural backstory, which the undersigned will explain below.

Prism and Entropy apparently "are infrastructure consulting firms specializing in the development of renewable energy projects." (Document No. 5, p. 2). Reynolds is the CEO of both companies. Id. Five M's owns over 450 acres of land in Cabarrus County, and it contracted with Prism and Entropy to develop a solar project on its land. Id. at pp. 2-3. According to the

Amended Complaint, the solar project "is one of, if not the, largest photovoltaic solar projects in the eastern United States." Id. at p. 3. At the conclusion of the initial solar project, Entropy claimed a $2 million fee for its services. Id. Five M's, in the hope of developing further land, "requested that a portion of the fee owed to Entropy be loaned via a loan agreement between Prism and Five M's." Id. "This loan was agreed to by and among the relevant parties and documented via a Loan Agreement between Prism and Five M's[,]…a Promissory Note[,]…and a Deed of Trust…all dated December 29, 2017."[1] Of particular importance to this case is that the Prism Loan Documents contained an indemnification clause. Id. at p. 5. Pursuant to the indemnification clause, Five M's "is required to indemnify and hold Prism harmless, along with Prism's directors, officers, employees and agents – including Reynolds." Id. The indemnification clause covered:

> any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur, or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of the Grantor), in connection with or arising out of or relating to the matters referred to in this Deed of Trust or in the other Loan Documents, whether (a) arising from or incurred in connection with any breach of a representation, warranty or covenant by the Grantor, or (b) arising out of or resulting from any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority;  provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses solely attributable to an Indemnified Party's gross negligence or willful misconduct. The indemnity agreement contained in this Section shall survive the termination of this Deed of Trust, payment of any Obligations and assignment

---

[1] Collectively, the undersigned will refer to these three documents as the "Prism Loan Documents," as they are referred to as such in the Amended Complaint.  Id.

>> of any rights hereunder. The Grantor may participate at its
>> expense in the defense of any such action or claim.

Id.

At some point between the execution of the loan agreement between Prism and Five M's and the filing of this action in spring 2021, Five M's became involved in litigation in Virginia state court, referred to throughout the Amended Complaint as the "Bristol Litigation." Id. at p. 4. Five M's membership was apparently controlled by the McBride family. Id. Five M's and two adult children of the McBride family are plaintiffs in the Bristol Litigation, and they are suing Henry T. McBride III for alleged wrongful conduct such as amending the Five M's "operating agreement to provide himself with certain rights and powers to act on behalf of Five M's." (Document No. 15, p. 3, n.3). One of the problematic transactions, Five M's and the other plaintiffs in Virginia state court contend, is the solar project with Prism, Entropy, and Reynolds. Id. Nonetheless, Henry T. McBride III is not the only defendant in the state court litigation, as noted in the Amended Complaint. Indeed, Plaintiffs in this case argue that the Bristol Litigation has evolved beyond a "bitter internal family dispute" to a larger case that "assert[s] unjustified and improper claims against various third parties in an effort to extort settlement funds and justify wild, unsubstantiated conspiracy theories." (Document No. 5, p. 4). One of the other defendants in the Bristol Litigation is Reynolds, against whom Five M's and the other state court plaintiffs allege derivative claims "for the services he provided in his capacity as CEO of Entropy and Prism in connection with the NC Solar Project." Id. Neither Prism nor Entropy is a named defendant in the Bristol Litigation. Id.

According to the Amended Complaint, "Prism is obligated to defend and indemnify its CEO Reynolds for any and all claims, losses, and causes of action" related to the Bristol Litigation. Id. And, according to Prism and Entropy, "[t]he relief purportedly sought by the Bristol Plaintiffs

3

is the forfeiture and recovery of the $2,000,000 paid to Entropy and Prism in connection with the development of the NC Solar Project." Id. at p. 5.

Plaintiffs bring two claims against Defendant: (1) for breach of contract; and (2) for a declaratory judgment. With respect to the declaratory judgment cause of action, Plaintiffs seek a declaration that they "are entitled to be indemnified and held harmless from…any and all claims, causes of action, and expenses of litigation[] relating to the Bristol Litigation pursuant to the agreements between Plaintiffs and Defendant as embodied in the Prism Loan Documents." Id. at p. 9.

"Defendant Five M's, L.L.C.'s Motion To Dismiss" (Document No. 14) was filed March 31, 2022. Plaintiffs' "Memorandum In Opposition To Motion To Dismiss" (Document No. 16) was filed April 14, 2022. Defendant's "Reply To Plaintiffs' Memorandum In Opposition To Motion To Dismiss" (Document No. 17) was filed April 21, 2022.

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The plaintiff has the burden of proving that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of

Am., 511 U.S. 375, 377 (1994)).  Furthermore, for actions in federal court based on diversity jurisdiction, the case "must be between 'citizens of different states,' [] and the amount in controversy must exceed $75,000."  Unitrin Auto & Home Ins. Co. v. Bastida, 2009 WL 3591190, at * 1 (W.D.N.C. Oct. 26, 2009) (citing 28 U.S.C. § 1332(a)(1)).  When a defendant raises failure to satisfy the amount in controversy requirement as the reason for arguing that dismissal under Rule 12(b)(1) is appropriate, "[u]sually, 'the sum claimed by the plaintiff controls the amount in controversy determination.'"  Foy v. State Farm Mut. Ins. Co., 3:20-CV-261-RJC-DCK, 2021 WL 7185234, at *4 (W.D.N.C. Mar. 11, 2021) (quoting JTH Tax v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010)).  To "justify dismissal," "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount."  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000).  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007));  see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

**1. Lack of Subject-Matter Jurisdiction: Amount in Controversy**

Defendant argues that Plaintiffs' Amended Complaint fails to state "any damage amount at all" and instead bases their amount in controversy on "'speculation' [and] 'what ifs.'" (Document No. 15, p. 6). Defendant argues that for this reason, the Court should dismiss Plaintiffs' Amended Complaint for failure to satisfy the amount in controversy requirement of federal diversity jurisdiction. Id. (citing 28 U.S.C. § 1332(a)). Defendant frames the amount in controversy issue as revolving entirely around "repayment of attorneys' fees incurred by Prism and Reynolds." Id. at n.4. Consequently, Defendant contends, "[t]o the extent Plaintiffs attempt to point to the $2,000,000 fee referenced in the Complaint, or the amount of the Prism Note, $1,049,090.93 to satisfy the amount in controversy requirement, neither amount is actually 'in

controversy'…[t]here is no allegation that the alleged breach relates to the debt obligation or fee." Id.

To aid the undersigned's analysis of the amount in controversy issue, some examination of the factual background regarding the Bristol Litigation is necessary. According to Defendant, the Bristol Litigation began in July 2020, and Reynolds was a named defendant in that case until he "was voluntarily dismissed" on October 21, 2021. Id. at p. 7. Notably, as Plaintiff points out, Reynolds' dismissal from the Bristol Litigation was without prejudice. (Document No. 16, p. 5). Plaintiffs in the Bristol Litigation (one of which was Five M's – Defendant in this case) alleged three claims against Reynolds, among other claims involving other defendants, too. Those claims against Reynolds included "aiding and abetting another defendant's 'fiduciary breach'; business conspiracy [under Virginia law]; and common law conspiracy." (Document No. 15, p. 7).

From Defendant's perspective, since the amount in controversy issue centers only around the attorneys' fees necessary to defend Reynolds in the Bristol Litigation, the fact that "[t]he Amended Complaint is wholly devoid of any allegation as to the amount of attorneys' fees incurred by Reynolds in connection with the Bristol Litigation" is fatal to subject-matter jurisdiction. Id. Furthermore, notwithstanding the lack of a specific dollar amount in the Amended Complaint, Defendant argues that the attorneys' fees could never be in excess of $75,000, because of Reynolds' dismissal from the Bristol Litigation and the fact that he was only a defendant in that case for "approximately 15 months." Id.

Plaintiffs, on the other hand, frame the issue very differently. The indemnification provision in the Prism Loan Documents, they argue, covers not just attorneys' fees related to the Bristol Litigation, but also "protection of the principal benefit to Plaintiffs under the agreements in question – consideration of over $2,000,000." (Document No. 16, p. 1). They suggest that

7

"Defendant moves to dismiss this action based on a fundamental misunderstanding, or misstatement, of the principal relief sought in Plaintiffs' Amended Complaint." Id. They seek "a declaration as to their rights to full indemnification and recovery of any loss under the agreements at issue," which includes "both attorneys' fees that have accrued and continue to accrue" as well as the "right to be held harmless from…any claims to void or rescind the Prism Loan Documents (and the $1,000,000 underlying value of the same)…and any attempts…to claw back or unwind the $2,000,000 paid to Entropy/Prism." Id.

The undersigned finds that this case is made complicated by the fact of the Bristol Litigation having yet to be resolved. Mindful of the principle that "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation," the undersigned concludes that Defendant's framing of the issue takes a strained view of the relief sought in the Amended Complaint as explained below. Francis v. Allstate Ins. Co., 709 F.3d 362, 367 (4th Cir. 2013) (internal quotations and citations omitted). To determine the value of the object of the litigation, the Court must examine "the potential pecuniary effect that a judgment would have on either party to the litigation." Liberty Mut. Fire Ins. Co. v. Hayes, 1997 WL 568673, at *3 (4th Cir. Sept. 15, 1997). While, "[g]enerally, attorney's fees are not included in the amount-in-controversy calculation []…courts have created two exceptions to this rule," one of which (relevant here) is where "the fees are provided for by contract." Francis, 709 F.3d at 368 (internal quotations and citations omitted). Here, what the Amended Complaint unequivocally states as to the declaratory judgment claim is that Plaintiffs seek "to be indemnified and held harmless from…any and all claims, causes of action, and expenses of litigation arising from or relating to the Bristol Litigation under the agreements between Prism and Defendant." (Document No. 5, p. 8).

8

Case 3:21-cv-00169-RJC-DCK   Document 18   Filed 02/23/23   Page 8 of 12

Defendant's assertion that the only issue for the undersigned to consider is the amount of attorneys' fees necessary to defend Reynolds in the Bristol Litigation is too narrow. (Document No. 15, p. 6, n.4). The Amended Complaint plainly seeks both attorneys' fees *and* a full declaration of Plaintiffs' rights stemming from the Prism Loan Documents as applied to the Bristol Litigation. See (Document No. 5, p. 8). As that litigation is unresolved, and it remains to be seen what effect such litigation will have on the Prism Loan Documents and on any relevant parties, at this point, the undersigned finds that the amount in controversy threshold is clearly satisfied. This is because Defendant itself states in its motion that "[s]hould Five M's succeed in the Bristol Litigation, the relief awarded will include recission of those legal instruments involving the assets and liabilities of Five M's, which would include the Prism Loan Documents." (Document No. 15, p. 11).

At this point, there are many unknowns regarding the ultimate effect of the Bristol Litigation. What is clear, however, is that the value of the note and attorneys' fees to defend Reynolds in the Bristol Litigation are in controversy, and discovery is necessary to flesh out the factual background of this case. It is not clear "to a legal certainty" that the amount in controversy is less than the jurisdictional threshold, and thus, dismissal is inappropriate. See St. Paul Mercury Indem. Co., 303 U.S. at 289. The value of the note and attorneys' fees for Reynolds in the Bristol Litigation clearly exceeds $75,000, even though the amount of attorneys' fees at issue is not stated in the Amended Complaint, as the value of the note is over $1 million. See id. at p. 6, n.4. At this stage of the litigation, the undersigned will therefore respectfully recommend that Defendant's motion to dismiss Plaintiffs' claims for lack of subject-matter jurisdiction be denied.

**2. Failure to State a Claim Under Rule 12(b)(6)**

Defendant in the alternative argues that Plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Five M's contends that the entire basis for Plaintiffs' lawsuit is the Prism Loan Documents, specifically, the indemnification provision in such documents. See (Document No. 5, p. 5). Defendant points to the carve-out in the indemnification provision that states: "the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses solely attributable to an Indemnified Party's gross negligence or willful misconduct." (Document No. 15, p. 8); see also (Document No. 5, p. 5). Given that "the three [] claims against Reynolds in the Bristol Litigation…all involve willful misconduct in that they allege intentional, wrongful acts by Reynolds," Five M's argues that it "is not obligated to indemnify Reynolds (or Prism), and Plaintiffs' claim should therefore be dismissed."[2] (Document No. 15, pp. 8-9).

In response, Plaintiffs argue that Reynolds "diligently performed his services as contractually agreed," which does "not make [his actions] 'willful misconduct.'" (Document No. 16, p. 10). Furthermore, Plaintiffs argue that the allegations against Reynolds in the Bristol Litigation have not been definitively concluded to be "willful misconduct," and "[s]uch allegations may ultimately be proven true or false, but that determination itself would be a decision on the merits of the case." Id. As such, Plaintiffs contend that they "are not obligated to prove the ultimate outcome of the Bristol Litigation…at the outset merely in order to allege a viable claim for relief." Id. at p. 11.

---

[2] The three claims brought against Reynolds in the Bristol Litigation allegedly include: aiding and abetting another defendant's fiduciary breach, business conspiracy under Virginia law, and common law conspiracy. See (Document No. 15, p. 9). Although Reynolds has been dismissed without prejudice as a Defendant, the case (based on representations of the parties in the underlying briefing) is still unresolved. (Document No. 16, p. 5); (Document No. 15, p. 12).

10

Case 3:21-cv-00169-RJC-DCK    Document 18    Filed 02/23/23    Page 10 of 12

The undersigned agrees with Plaintiffs. To the undersigned's knowledge, based on the representations of the parties to date, the Bristol Litigation is yet to be resolved. Given that Plaintiffs' case seeks a declaration of their rights under an indemnification clause as applied to pending state litigation, for the undersigned to apply the indemnification clause to acts that have yet to be fully adjudicated in that litigation would be premature. Here, Plaintiffs have adequately stated a claim for relief at this stage of the litigation, and discovery is warranted going forward.

Regarding Defendant's argument that "this Court should dismiss Plaintiffs' claims pending resolution of the Bristol Litigation," at this point, such action would be premature. Discovery is necessary to flesh out the factual background of this case, particularly given ongoing and heavily related litigation at the state court level in Virginia. At this point, the undersigned concludes that Plaintiffs have adequately pled their claims such that they should survive dismissal under Rule 12(b)(6). For this reason, the undersigned will respectfully recommend that Defendant's motion to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) be denied. Of course, such a recommendation is without prejudice to Defendant re-raising such arguments at summary judgment, following development of the factual record through discovery.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant Five M's L.L.C.'s Motion To Dismiss" (Document No. 14) be **DENIED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service

11

Case 3:21-cv-00169-RJC-DCK   Document 18   Filed 02/23/23   Page 11 of 12

of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: February 23, 2023

David C. Keesler
United States Magistrate Judge